IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CUSTOM DIRECT, LLC                  \*
1802 Fashion Court
Joppa, MD 21085-3237             \*

     Plaintiff                   \*     Civil Action No.

v.                                 \*

WYNWYN, INC.                   \*
5629 Melody Lake Drive
Edina, MN 55436                 \*

and                              \*

BRONWYN BAMBER           \*
1491 Caxambas Court
Marco Island, Florida 34145     \*

and                              \*

TAYLOR BAMBER             \*
5629 Melody Lake Drive
Edina, MN 55436                 \*

     Defendants               \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## **COMPLAINT**

Plaintiff, CUSTOM DIRECT, LLC ("Custom Direct"), by its attorneys, files this Complaint for damages and for injunctive relief against Defendants, WYNWYN, INC., BRONWYN BAMBER and TAYLOR BAMBER, and alleges as follows:

### PRELIMINARY STATEMENT

1.     Custom Direct owns the trademarks Check Crafters®, 4Checks.com®, Artistic Checks®, Artistic Greetings®, Artisstix®, Styles Checks®, Life Checks®, Identity Checks™, Image Checks®, Classic Checks™, Custom Checks™, Check Gallery Checks®, Unique

Checks™, Unique Products ™, Style Checks™, Check Partners™, Message Products ™, Earth Matters™, and Message Checks™ among others, (hereinafter "CUSTOM DIRECT Marks") in connection with a wide variety of bank checks, check accessories and related printing services. The products and services Custom Direct sells in connection with the CUSTOM DIRECT Marks have received an enormous amount of popularity and media attention throughout the United States.

2.      As a supplement to its bank check business, Custom Direct has also developed unique designs on the checks it sells to customers which are sold throughout the United States and protected by United States Copyright laws.

3.      Defendants, with knowledge of the CUSTOM DIRECT Marks and the unique designs developed by Custom Direct for its checks and without permission or authority, has advertised, promoted, sold, and offered checks, check accessories and other related products and services in connection with the CUSTOM DIRECT Marks and checks and derivatives thereof. Such activities constitute a pattern of unlawful activity that damages Custom Direct, unjustly enriches Defendants, and confuses and deceives the consuming public.

4.      Because Defendants' promotional materials and advertising are distributed via similar distribution channels as Custom Direct and are directed to the same or similar consumers, Custom Direct seeks injunctive and monetary relief with respect to Defendants' activities which are likely to mislead and confuse consumers about the source, sponsorship, and affiliation of Custom Direct's products and services and which trade upon the goodwill of the CUSTOM DIRECT Marks and designs.

## PARTIES

5.      Custom Direct is a Delaware limited liability company having its principal place of

business at 1802 Fashion Court, Joppa, MD 21085-3237

6.      Defendant WynWyn, Inc. is a corporation having its principal place of business at 1491 Caxambas Court, Marco Island, Florida 34145 where defendant Bronwyn Bamber also resides.  Upon information and belief, Bronwyn Bamber is the owner and president of WynWyn, Inc.  Defendant, Taylor Bamber maintains a residence at 5629 Melody Lake Drive, Edina, MN 55436.

7.      This is an action for trademark infringement, dilution, and unfair competition, arising under the laws of the United States (15 U.S.C. § 1114, § 1117-8, and § 1125), copyright infringement under the laws of the United States (17 U.S.C. § 101, et seq) and under the laws of the State of Maryland.

8.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. §1116, §1121, and 28 U.S.C. § 1338. This Court has supplemental jurisdiction over state claims in this action under 28 U.S.C. § 1367(a).

9.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Custom Direct resides in this district, this action arises out of the activities of Defendants within this district, and Defendants are subject to personal jurisdiction in this district.

## THE BUSINESS OF PLAINTIFF

10.      Custom Direct is one of the top check producers in North America. Custom Direct's check business segment is one of the United States' leading direct-to-consumer check suppliers. That segment offers personal checks, a complete line of business checks, and check-related products to consumers.

11.      Custom Direct offers products and services under a variety of marks, including the CUSTOM DIRECT Marks. Custom Direct's products and services under its CUSTOM

DIRECT Marks are offered to consumers throughout the United States.  Custom Direct has

continuously sold products and services under the CUSTOM DIRECT Marks in the United

States through interstate commerce. The marks which have been used by Custom Direct and

either are formally registered by it, are now owned by it through assignment from an affiliated

company, or have been continuously used by it and established secondary meaning include the

following Check Crafters®, 4Checks.com®, Artistic Checks®, Artistic Greetings®, Artisstix®,

Styles Checks®, Life Checks®, Identity Checks™, Image Checks®, Classic Checks™, Custom

Checks™, Check Gallery Checks®, Unique Checks™, Unique Products ™, Style Checks™,

Check Partners™, Message Products ™, Earth Matters™, and Message Checks™.

        12.     Many of the CUSTOM DIRECT Marks are incontestable pursuant to 15 U.S.C. §

1065, and are therefore conclusive evidence of the validity of the registered marks and of the

registrations of the marks, of Custom Direct's ownership of the marks, and of Custom Direct's

exclusive right to use the registered marks in commerce.

        13.     The CUSTOM DIRECT Marks are distinctive for its products and were developed

prior to the time Defendants began using the marks as well as other derivatives of the CUSTOM

DIRECT Marks in connection with its services and selling check products which were almost

identical to those sold by Custom Direct. Custom Direct also holds common law or unregistered

rights in the above-identified trademarks and products. By virtue of its prior and consistent use,

development of secondary meaning and/or registration of the CUSTOM DIRECT Marks and

product designs, Custom Direct is the senior owner of all right, title, and interest in the

CUSTOM DIRECT Marks and product designs.

        14.     The CUSTOM DIRECT Marks are recognized and relied upon as identifying

Custom Direct as the sole source of the Custom Direct products, and as distinguishing the

Custom Direct products from the products and services of others. As a result, CUSTOM DIRECT Marks and products have acquired substantial goodwill and are extremely valuable commercial assets.

15.     In addition to these marks, Custom Direct created unique designs for several of its products including the checks which it sells and maintains copyrights on those check designs. For example, Custom Direct maintains copyrights on designs in checks it sells which depict circles, hearts and diamond plating, among others.

16.     Custom Direct has invested a significant amount of money to promote its products and services under its copyrights and CUSTOM DIRECT Marks. As a result, consumers across the United States are aware of the check designs and CUSTOM DIRECT Marks and recognize their relationship to Custom Direct and its standards.

17.     Consumers are invited to visit Custom Direct's online websites to view Custom Direct's products, communicate with Custom Direct's support centers, and review information about Custom Direct and its offerings. Through those websites, consumers are able to place orders for Custom Direct's products.

18.     Custom Direct advertises, promotes, and markets the Custom Direct products under the CUSTOM DIRECT Marks in a wide variety of ways, including online marketing through search engine advertising.

19.     Internet search engines (e.g. Google, Yahoo!, Altavista, MSN, and AOL, etc.) enable consumers to locate specific companies and the online websites of those companies by keying in terms and performing searches of search engine databases. The process of conducting a key term search on a search engine is nearly instantaneous, which allows consumers to rapidly key in a search term, view results of that query, select a destination, and arrive at the website of the

selected company.

20.     Internet search engines produce at least two types of search results: organic and sponsored. Organic search results are based on data collected by search engines from the Internet. Search engines use crawlers, spiders, and other technology to learn and collect information from various websites located on the Internet. Those results are then collected in a database. If a key term entered by a consumer matches the data collected from a particular website, that website may be produced as a search result. Sponsored search results are links that are based on keywords purchased by advertisers. Several search engines have set up sponsored link programs as a way to generate revenue for the search engines and enable advertisers to reach additional consumers. As part of a sponsored link program, advertisers purchase or bid on terms. Those terms are then linked to the advertiser's advertisement, which contains a link to the advertiser's desired Internet address or website.

21.     A keyword advertisement is generally composed of a header, a description, and a link. Advertisers fill in each section of the advertisement when signing up for the advertisement placement.

22.     If a consumer keys in an advertiser's purchased term, the advertiser's advertisement and website link will appear on the search results page. The more advertisers who bid on a particular term, the higher price the search engines charges for placement of the advertisement.  One example of a sponsored link program is Google, Inc.'s AdWords program. The AdWords program enables advertisers to purchase or bid on keywords that generate an advertising link (called a "Sponsored Link") on the search results page. The Sponsored Link directs consumers to the advertiser's website or advertisement.

23.     The search results page generally contains a mixture of organic and sponsored

search results. The sponsored results generally occur before and to the side of the organic search results, but the results may also be mixed together depending on the search engine.

24.    By placing a competitor's trademarks in keyword advertisements, advertisers trick consumers into believing that the advertiser's products or services are in some way related, endorsed, sponsored by, or affiliated with the competitor or the competitor's trademark.  Because of the ease of conducting a search and the speed of the search results, consumers may click on the competitor's website, many of whom do not realize they have clicked on the link to a company unrelated to the term placed in the search engine query box.

**DEFENDANTS' UNAUTHORIZED USE OF THE CUSTOM DIRECT MARKS**

25.    Until June, 2009, Defendant Bronwyn Bamber was an affiliate marketer of Custom Direct.  As an affiliate marketer, Ms. Bamber would advertise on various sites in the Internet and drive customers to Custom Direct where they could purchase its services and goods.  For a period of time, Ms. Bamber was one of Custom Direct's most successful affiliate marketers.  As a result, she was granted greater access and use of Custom Direct's intellectual property and was able to collect considerable information on Custom Direct's customers, including their sensitivity to certain search terms, their buying preferences and the more popular items sold by Custom Direct.

26.    Based on her relationship with Custom Direct, Defendants also had notice of Custom Direct's rights in its CUSTOM DIRECT Marks.  Based in large part on Defendants' clear efforts to directly benefit from the notoriety and commercial value of the CUSTOM DIRECT Marks and products as set forth in detail herein, Defendants are fully aware that their actions violate Custom Direct's rights.

27.    Prior to and after Bronwyn Bamber's termination of her relationship with Custom Direct, Defendants began incorporating the CUSTOM DIRECT Marks in connection with

Defendants' advertising, promotion, and marketing of competing products, including advertisement placed on Google's AdWords program and other search engines.  Attached as Exhibit A and Exhibit B are screenshots of several searches done using CUSTOM DIRECT Marks which show direction to Defendants' websites or use on Defendants' websites.

28.     In addition to use of the CUSTOM DIRECT Marks, based on the knowledge gained about Custom Direct's products and customers, Defendants began to sell checks which were almost identical in style, appearance and design to those sold and copyrighted by Custom Direct.   For example, the following side by side comparisons exist of products sold by Custom Direct (image on the right) and which Defendants now seek to sell (image on left).

 

Circles
http://www.bankchecksplus.com/productlist.aspx?s=personal%20checks&a=9282&z=GEO-14&mt=Patterns&i=1

 

Diamond Plate
http://www.bankchecksplus.com/productdetails.aspx?qfCode=buy-cheap-checks.com&qfProductID=GEO-23&sub=A-B-Organic

 

Hearts
http://www.bankchecksplus.com/productlist.aspx?s=personal%20checks&a=9282&z=GEO-25&mt=Girly_Romance&i=1

29.     By placing the CUSTOM DIRECT Marks in their advertisements and also selling

checks which are similar in design and appearance, Defendants sought and continue to seek to trick consumers into visiting Defendants' websites, which provide consumers products and services similar to the Custom Direct products.

30.     Defendants WynWyn, Inc. and Bronwyn Bamber maintain and operate at least the websites located at the following Internet addresses: www.buy-cheap-checks.com, www.buycheapchecks.com, www.4-personal-checks.com, www.checks-superstore.com and www.checks-4U.com.  Defendant Taylor Bamber maintains and operates at least the website located at www.buynewchecks.com.  Defendants' websites offer checks, check accessories, and other related products, all of which are the same, similar to, or related to the Custom Direct products and all of which illegally use CUSTOM DIRECT Marks.

31.     Defendants have used and continue to use the CUSTOM DIRECT Marks and derivatives of those marks in the advertisements that lead to Defendants' websites.  On information and belief, Defendants have used Internet advertisement programs, such as sponsored links from search engines, as a method of advertising that would result in links to Defendants' website that would incorporate the CUSTOM DIRECT Marks and then lead customers to products in appearance to those offered by Custom Direct.

32.     By purchasing keywords in connection with sponsored links for various search engines, Defendants were aware of their responsibility to ensure that its advertisements did not infringe the trademark rights of others. For example, when signing up for Google 's Standard Edition AdWords Program, the following words appear in a pop-up when selecting keywords: "Keep in mind that you alone are responsible for the keywords you select and for making sure that your use of the keywords does not violate any applicable laws, including any applicable trademark laws."   The affiliate marketing terms and conditions to which Defendant Bronwyn

Bamber agreed when she was an affiliate marketer of Custom Direct further stated that "Affiliate

may not display our name or link in any way that may . . . mislead the customer" and

> we do not use competitors' names in the search return or description of our
> advertisements. It is not only a practice we find to be unethical, but the Google
> AdWords Editorial Guidelines also state, "Your keywords and ad text must be
> relevant to your site, products or services."

Defendants were aware of Custom Direct's superior rights to the CUSTOM DIRECT

Marks but failed to ensure that the sponsored links they used did not incorporate the CUSTOM

DIRECT Marks or use Custom Direct product designs.

33.     Defendants' use of the CUSTOM DIRECT Marks and derivatives of those marks in

online advertisements is in interstate commerce, including Maryland.

34.     Defendants bid on particular keywords that result in the placement of

advertisements on the search results page. By outbidding Custom Direct and other affiliates

on those keywords, Defendants are able to gain placement in the search results page. Because

Defendants' advertisements contain CUSTOM DIRECT Marks and/or derivatives of those

marks and also advertise products similar in appearance to those sold by Custom Direct,

consumers are likely to believe Defendants have the most relevant results and click on those

results rather than finding Custom Direct's advertisement.

35.     Defendants' use of the CUSTOM DIRECT Marks and products which look like

Custom Direct's products are likely to cause confusion, mistake, or deception as to the source of

origin of Defendants' products and services in that customers and potential customers are

likely to believe that the products and services listed in the advertisements are provided

by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way

legitimately connected to Custom Direct.

36.     Once consumers click on Defendants' advertisements, the consumers are taken to

Defendants' websites, which sell the same, similar, or related products as the Custom Direct products. By clicking on Defendants' advertisements that are made to look like Custom Direct's advertisements and products, consumers are directed away from visiting Custom Direct's actual websites.

37.     Defendants have also used forwarding techniques to deceive consumers into believing that they are purchasing Custom Direct products when in fact they are being forwarded to Defendants' websites. Upon information and belief, meta data (hidden data inserted into a website) serves as the title text as well as the descriptive text that captures customers who are searching for Custom Direct products.  Examples of Defendants' use of CUSTOM DIRECT Marks in meta data are attached as Exhibit C.  Consumers who see the result mistakenly believe that the underlying website belongs to Custom Direct or is in some other way affiliated, connected, or associated with Custom Direct.

38.     Through Defendants' misuse of CUSTOM DIRECT Marks, Defendants are aware that consumers are likely to believe that the resulting website is either a Custom Direct site or one affiliated, associated, or connected with Custom Direct. That initial interest confusion harms Custom Direct, even if the consumer later learns that Defendants' site is not related to Custom Direct.

39.     Defendants are not authorized to use the CUSTOM DIRECT Marks or any derivative of the CUSTOM DIRECT Marks.

40.     Custom Direct sent actual notice of infringement to Defendants. Defendants have refused to take action in response to that notice and continue to bid on keywords and otherwise use CUSTOM DIRECT Marks.

41.     Despite their knowledge regarding Custom Direct's prior and superior rights in its

CUSTOM DIRECT Marks and products and without the authorization of Custom Direct, Defendants continue to offer checks and check re-ordering services through infringing use of the CUSTOM DIRECT Marks and derivatives of those marks.

42. Defendants are aware of the vast and valuable goodwill and reputation represented and symbolized by the CUSTOM DIRECT Marks and product designs. Defendants are also aware that Custom Direct's consumers and potential consumers rely upon the CUSTOM DIRECT Marks and products as distinguishing Custom Direct's products from the products of others.

43. Defendants' continued use of the CUSTOM DIRECT Marks as well as derivatives of those marks is likely to diminish the goodwill associated with the CUSTOM DIRECT Marks.

44. Defendants' products and services offered in connection with the CUSTOM DIRECT Marks and derivatives of those marks are offered and/or promoted in the same channels of trade as the Custom Direct products sold under the CUSTOM DIRECT Marks. Defendants and Custom Direct offer their products and services to consumers across the United States, including through websites located on the Internet.

45. Defendants' promotion of its goods and services offered for sale and sold under the CUSTOM DIRECT Marks and derivatives of those marks is targeted to the same consumers of the Custom Direct Products.

46. Defendants' products and services offered for sale and sold under the CUSTOM DIRECT Marks and derivatives of those marks are being provided and/or promoted, and are likely to continue being provided and/or promoted, throughout the same geographic markets as Custom Direct's products. Defendants derive and will continue to derive substantial revenue from their goods and services obtained through their use of the CUSTOM DIRECT Marks and derivatives of those marks in interstate commerce.

47.     Defendants' activities are likely to cause forward and/or reverse confusion or mistake or to deceive consumers into believing that their unauthorized goods and services provided under the CUSTOM DIRECT Marks and derivatives of those marks are sponsored, licensed or authorized by, or affiliated, connected, or otherwise associated with Custom Direct or that the Custom Direct Products offered under the CUSTOM DIRECT Marks are sponsored, licensed or authorized by, or affiliated, connected or otherwise associated with Defendants or their products and services.

48.     Defendants have acted and continue to act without regard to Custom Direct's property rights and goodwill. Defendants' actions are willful, have caused Custom Direct actual harm and will continue to suffer irreparable harm if Defendants' conduct is not enjoined.

49.     Defendants' unauthorized use of the CUSTOM DIRECT Marks and derivatives of those marks as well as check designs which are similar to those copyrighted by Custom Direct in association with checks and check re-selling services has significantly injured Custom Direct's interests and will continue to do so unless immediately enjoined. Specifically, Defendants (a) have traded upon and threaten to further trade upon the significant and valuable goodwill in the CUSTOM DIRECT Marks; (b) are likely to cause public confusion as to the source, sponsorship or affiliation of Defendants' services; (c) have damaged and threaten to further damage Custom Direct's significant and valuable goodwill in its CUSTOM DIRECT Marks; (d) have injured and threaten to further injure Custom Direct's right to use its CUSTOM DIRECT Marks as the exclusive indicia of origin of Custom Direct's Products throughout the United States; (e) have increased the cost of advertising and caused lost profits; (f) have injured Custom Direct which has no control over the quality of the goods sold by Defendants; and (g) have lessened the capacity of the CUSTOM DIRECT Marks to indicate that its products are sponsored by Custom Direct.

50.     Upon information and belief, Defendants will continue unlawfully to use the CUSTOM DIRECT Marks and derivatives of those marks to promote and provide its services, unless enjoined by the Court.

51.     In many cases, Custom Direct has either no or inadequate remedies at law to rectify this situation.

**COUNT I**
**TRADEMARK INFRINGEMENT**
(15 U.S.C. § 1114)

52.     Custom Direct incorporates by reference paragraphs 1 through 51 as if alleged herein.

53.     Defendants' conduct constitutes infringement of Custom Direct's registered trademarks and service marks in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114) and is likely to cause confusion, mistake, and deception of the public as to the identity, origin, affiliation, and sponsorship of Defendants' goods and services.

54.     The infringement by Defendants has been willful and deliberate, designed specifically to trade upon the goodwill associated with the CUSTOM DIRECT Marks.

55.     Custom Direct has been damaged by Defendants' actions in an amount to be proven at trial.

56.     The goodwill of Custom Direct's business under its CUSTOM DIRECT Marks is of enormous value, and Custom Direct will suffer irreparable harm should infringement be allowed to continue to the detriment of its trade reputation and goodwill.

WHEREFORE, CUSTOM DIRECT requests judgment against Defendants as follows:

a.     For preliminary and permanent injunctions enjoining Defendants, their agents,

servants, employees, officers, directors, representatives, and all persons acting in concert with or for them, from using or otherwise infringing upon CUSTOM DIRECT Marks;

b.      That Defendants be required to account to Custom Direct for Defendants' sales leads, revenues, profits, and the actual damages suffered by Custom Direct as a result of Defendants' acts of infringement and false designation of origin, together with interest and costs;

c.      That Defendants be ordered to discontinue its purchase of any advertisements incorporating any trademarks owned by Custom Direct from any Internet search services or other advertising media or using the trademarks in any meta data on websites owned or controlled by them;

d.      Compensatory damages of at least $200,000.00 and interest;

e.      Treble damages for Defendants' willful infringement;

f.      For attorney's fees and the costs of this suit; and

g.      For such other and further relief as this Court may deem just and proper.

## COUNT II
## COPYRIGHT INFRINGEMENT
(17 U.S.C. §501, et seq)

57.      Custom Direct incorporates by reference paragraphs 1 through 56 as if fully alleged herein.

58.      Disregarding the exclusive rights held by Custom Direct pursuant to 17 U.S.C. §§ 101, *et seq*., Defendants have knowingly, intentionally and willfully infringed upon Custom Direct's copyright by accessing and making unauthorized copies of the designs which are substantially and materially similar in design, style and appearance to those copyrighted designs

of Custom Direct.

59.     By virtue of their blatant infringement, Defendants are liable to Custom Direct for all resulting damages, including, *inter alia*, the amount by which they profited from copying the check designs. Alternatively, Defendants are liable for the maximum amount of statutory damages provided by the copyright laws of the United States, to the extent that such recovery is greater.

60.     To punish and to deter Defendants from further such acts, Defendants should also be held liable for substantial punitive damages and enjoined from further acts of infringement.

WHEREFORE, CUSTOM DIRECT requests judgment against Defendants as follows:

a.      For preliminary and permanent injunctions enjoining Defendants, their agents, servants, employees, officers, directors, representatives, and all persons acting in concert with or for them, from using or otherwise infringing upon Custom Direct's copyrights;

b.      That Defendants be required to account to Custom Direct for Defendants' sales leads, revenues, profits, and the actual damages suffered by Custom Direct as a result of Defendants' acts of infringement, together with interest and costs;

c.      That Defendants be ordered to discontinue selling checks which are similar in design, appearance or style as Custom Direct;

d.      Compensatory damages of at least $200,000.00 and interest;

e.      Statutory damages;

f.      Punitive damages for Defendants' willful infringement;

g.      For attorney's fees and the costs of this suit; and

h.      For such other and further relief as this Court may deem just and proper.

**COUNT III**

<u>**FALSE DESIGNATION OF ORIGIN, DESCRIPTION AND REPRESENTATION**</u>
(15 U.S.C. §1125(a))

61.     Custom Direct incorporates by reference paragraphs 1 through 60 as if fully alleged herein.

62.     Defendants' conduct constitutes infringement of Custom Direct's common law trademark and service mark rights in the CUSTOM DIRECT Marks through false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act (15 U. S.C. § 1125(a)).

63.     Defendants' use in commerce of CUSTOM DIRECT Marks and/or sale of checks which are substantially similar to Custom Direct's products are likely to cause confusion as to the origin of goods and services sold by Defendants.

64.     Defendants' acts of drawing consumers to its site by using CUSTOM DIRECT Marks and offering products which directly infringe on Custom Direct's copyrights or are deceptively similar are calculated to deceive the relevant consuming public into accepting and purchasing Defendants' services under the mistaken belief that Defendants' good and services are sponsored by, connected with, or supplied under the supervision of Custom Direct.

65.     Custom Direct has no control over the quality of the goods sold by Defendants, and because of the confusion as to the source engendered by Defendants, Custom Direct's valuable goodwill in respect to the CUSTOM DIRECT Marks are at the mercy of Defendants.

66.     The false designation of origin and unfair competition by Defendants has been willful and deliberate, designed specifically to trade upon the goodwill associated with CUSTOM DIRECT Marks and copyrights.

67.     Custom Direct has been damaged by Defendants' actions in an amount to be proven at trial.

68.     The goodwill of Custom Direct's business under its CUSTOM DIRECT Marks and copyrights are of enormous value, and Custom Direct will suffer irreparable harm should false designation of origin and unfair competition be allowed to continue to the detriment of its trade reputation and goodwill.

WHEREFORE, CUSTOM DIRECT requests judgment against Defendants as follows:

a.      For preliminary and permanent injunctions enjoining Defendants, their agents, servants, employees, officers, directors, representatives, and all persons acting in concert with or for them, from using or otherwise infringing upon CUSTOM DIRECT Marks;

b.      That Defendants be required to account to Custom Direct for Defendants' sales leads, revenues, profits, and the actual damages suffered by Custom Direct as a result of Defendants' acts of infringement and false designation of origin, together with interest and costs;

c.      That Defendants be ordered to discontinue its purchase of any advertisements incorporating any trademarks owned by Custom Direct from any Internet search services or other advertising media or using the trademarks in any meta data on websites owned or controlled by them;

d.      Compensatory damages of at least $200,000.00 and interest;

e.      Treble damages for Defendants' willful infringement;

f.      For attorney's fees and the costs of this suit; and

g.      For such other and further relief as this Court may deem just and proper.

## COUNT IV
## TRADEMARK AND SERVICE MARK INFRINGEMENT
## <u>UNDER MARYLAND COMMON LAW</u>

69.     Custom Direct incorporates by reference paragraphs 1 through 68 as if fully alleged herein.

70.     By the foregoing acts, Defendants are likely to deceive and cause confusion of the relevant consuming public and constitute trademark and service mark infringement under the common law of the State of Maryland.

71.     Defendants' acts are calculated to deceive the relevant consuming public into accepting and purchasing Defendants' services under the mistaken belief that Defendants' good and services are sponsored by, connected with, or supplied under the supervision of Custom Direct.

72.     Custom Direct has no control over the quality of the goods sold by Defendants, and because of the confusion as to the source engendered by Defendants, Custom Direct's valuable goodwill in respect to the CUSTOM DIRECT Marks are at the mercy of Defendants.

73.     The false designation of origin and unfair competition by Defendants has been willful and deliberate, designed specifically to trade upon the goodwill associated with CUSTOM DIRECT Marks and copyrights.

74.     Custom Direct has been damaged by Defendants' actions in an amount to be proven at trial.

75.     The goodwill of Custom Direct's business under its CUSTOM DIRECT Marks and copyrights are of enormous value, and Custom Direct will suffer irreparable harm should false designation of origin and unfair competition be allowed to continue to the detriment of its

trade reputation and goodwill.

WHEREFORE, CUSTOM DIRECT requests judgment against Defendants as follows:

a.      For preliminary and permanent injunctions enjoining Defendants, their agents, servants, employees, officers, directors, representatives, and all persons acting in concert with or for them, from using or otherwise infringing upon CUSTOM DIRECT Marks;

b.      That Defendants be required to account to Custom Direct for Defendants' sales leads, revenues, profits, and the actual damages suffered by Custom Direct as a result of Defendants' acts of infringement and false designation of origin, together with interest and costs;

c.      That Defendants be ordered to discontinue its purchase of any advertisements incorporating any trademarks owned by Custom Direct from any Internet search services or other advertising media or using the trademarks in any meta data on websites owned or controlled by them;

d.      Compensatory damages of at least $200,000.00 and interest;

e.      Treble damages for Defendants' willful infringement;

f.      For attorney's fees and the costs of this suit; and

g.      For such other and further relief as this Court may deem just and proper.

## COUNT V
## UNFAIR COMPETITION UNDER COMMON LAW

76.      Custom Direct incorporates by reference paragraphs 1 through 75 as if fully alleged herein.

77.      The foregoing acts of Defendants constitute unfair competition, palming off, unjust enrichment, and misappropriation of Custom Direct's rights under the common law of the

State of Maryland in that such acts permit, and will continue to permit, Defendants to use and benefit from the goodwill and reputation earned by Custom Direct to obtain a ready customer acceptance for services advertised, offered for sale, and promoted by Defendants under the CUSTOM DIRECT Marks on the basis of a reputation not established in Defendants' own right, and to give Defendants' products and services an affirmation that they would not otherwise have, all at Custom Direct's expense.

78.     Defendants continuing advertising, offering for sale and promoting of Defendants' products and services by using the CUSTOM DIRECT Marks cause Custom Direct irreparable harm, costs and expenses as shall be shown at trial.

WHEREFORE, CUSTOM DIRECT requests judgment against Defendants as follows:

a.     For preliminary and permanent injunctions enjoining Defendants, their agents, servants, employees, officers, directors, representatives, and all persons acting in concert with or for them, from using or otherwise infringing upon CUSTOM DIRECT Marks;

b.     That Defendants be required to account to Custom Direct for Defendants' sales leads, revenues, profits, and the actual damages suffered by Custom Direct as a result of Defendants' acts of infringement and false designation of origin, together with interest and costs;

c.     That Defendants be ordered to discontinue its purchase of any advertisements incorporating any trademarks owned by Custom Direct from any Internet search services or other advertising media or using the trademarks in any meta data on websites owned or controlled by them;

d.     Compensatory damages of at least $200,000.00 and interest;

e.     Treble damages for Defendants' willful infringement;

f.      For attorney's fees and the costs of this suit; and

g.      For such other and further relief as this Court may deem just and proper.

**COUNT VI**
**DECEPTIVE TRADE PRACTICES UNDER MARYLAND LAW**
(Md. Comml. Law Ann. Code §13-301, et seq)

*79.*      Custom Direct incorporates by reference paragraphs 1 through 78 as if fully alleged herein.

80.      Defendants' acts described above constitute trademark infringement, service mark infringement, and unfair competition, as alleged in Counts one through five, and therefore constitute unlawful and deceptive trade business practices in violation of Maryland Comml. Law Ann. Code § §13-301, et seq.

81.      Defendants' Internet advertising practice of obtaining sponsored links that contain the CUSTOM DIRECT Marks is misleading and deceives the relevant consuming public with regard to the nature and origin of Defendants' products and services.

82.      Defendants were aware of the policies and responsibilities that they had when using CUSTOM DIRECT Marks and that they accepted by purchasing sponsored links, including the responsibility to ensure that Defendants' advertisements do not infringe the trademark right of others.

83.      Defendants' acts described above were intended to mislead the relevant consuming public with regard to the nature and origin of Defendants' products and services.

84.      The relevant consuming public would be reasonable in believing that Defendants are a distributor of Custom Direct products or are otherwise affiliated with Custom Direct after viewing Defendants' sponsored links that incorporated the CUSTOM DIRECT Marks.

85. Defendants' actions described above have caused Custom Direct damage in an amount to be determined at trial.

86. Defendants' acts have caused and will continue to cause Custom Direct irreparable harm.

WHEREFORE, CUSTOM DIRECT requests judgment against Defendants as follows:

a. For preliminary and permanent injunctions enjoining Defendants, their agents, servants, employees, officers, directors, representatives, and all persons acting in concert with or for them, from using or otherwise infringing upon CUSTOM DIRECT Marks;

b. That Defendants be required to account to Custom Direct for Defendants' sales leads, revenues, profits, and the actual damages suffered by Custom Direct as a result of Defendants' acts of infringement and false designation of origin, together with interest and costs;

c. That Defendants be ordered to discontinue its purchase of any advertisements incorporating any trademarks owned by Custom Direct from any Internet search services or other advertising media or using the trademarks in any meta data on websites owned or controlled by them;

d. Compensatory damages of at least $200,000.00 and interest;

e. Treble damages for Defendants' willful infringement;

f. For attorney's fees and the costs of this suit; and

g. For such other and further relief as this Court may deem just and proper.

_____/s/____Donald J. Walsh_____
DONALD J. WALSH, Federal Bar No. 09384
Offit Kurman, PA
8 Park Center Circle, Suite 200
Baltimore, Maryland   21117
443-738-1583

Attorneys for Custom Direct, LLC

OFFKUR\009\0093260\djw.pld. wynwyn complaint - final.doc